UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-652-RJC
(3:16-cr-258-RJC-DSC-1)

| | |
|---|---|
| **JOSEPH RANORRIS WILSON,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner was charged by Bill of Indictment with: Count (1), conspiracy to distribute and possess with intent to distribute a detectable amount of cocaine base and that 280 grams or more of cocaine base were attributable to and reasonably foreseeable by Petitioner (21 U.S.C. §§ 846, 841(b)(1)(A)); Count (2), possession with intent to distribute a mixture and substance containing crack cocaine (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)); Count (3), possession of a firearm in furtherance of a drug trafficking crime as charged in Count (2) (18 U.S.C. § 924(c)); Count (4), possession of a firearm by a convicted felon (18 U.S.C. § 922(g)); and Counts (5)-(7), distribution of, and possession with intent to distribute a mixture and substance containing a detectable amount of cocaine base (21 U.S.C. §§ 841(a)(1), 841(b)(1)(C)). (3:16-cr-258 (CR) Doc. No. 10). The Government filed an Information pursuant to 21 U.S.C. § 851 and 841(b)(1)(A) setting forth three prior felony drug convictions that would establish a mandatory minimum sentence of 20 years of imprisonment and 10 years of supervised release. (CR Doc. No. 12).

1

The parties entered into a written Plea Agreement that was signed by the prosecutor, defense counsel, and Petitioner. (CR Doc. No. 17). The Plea Agreement provided that Petitioner was pleading guilty to Count (1) and he admitted to being in fact guilty as charged in Count (1). (CR Doc. No. 17 at 1). Petitioner admitted that he qualified for enhanced sentencing pursuant to § 851, however, the Government agreed to withdraw the § 851 Information at the time of sentencing if Petitioner "complie[d] with each and every provision of this Plea Agreement," in which case Petitioner's sentencing exposure would be a minimum of 10 years' imprisonment and a maximum term of life, a $10,000,000 fine, or both, and no less than 5 years of supervised release. (CR Doc. No. 17 at 2). The parties agreed to jointly recommend: "[t]he amount of cocaine base ('crack cocaine') that was known to or reasonably foreseeable by [Petitioner] was in excess of eight hundred and forty (840) grams but less than two thousand eight hundred (2,800) grams, resulting in a base offense level of 32;" Petitioner "should receive a 2-level weapon enhancement pursuant to U.S.S.B. § 2D1.1(b)(1);" and Petitioner "is not eligible for the 'safety valve' pursuant to 17 U.S. Code § 3553(f) and U.S.S.G. §§ 2D1.1(b)(1)(17) and 5C1.2." (CR Doc. No. 17 at 2-3). The Government agreed that Petitioner's plea was timely pursuant to U.S.S.G. § 3E1.1(b). (CR Doc. No. 17 at 3). The parties agreed that either party may argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures and variances from the applicable guideline range. (Id.).

The Plea Agreement set forth the consequences of the guilty plea and the rights Petitioner was waiving by pleading guilty including his express waiver of his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 17 at 5). The Plea Agreement provided that Petitioner stipulated to the existence of a factual

basis for the plea, that he read and understood the Factual Basis filed with the Plea Agreement, and that the Factual Basis could be used by the Court, U.S. Probation Office, and the United States unless an objection to a particular fact was explicitly reserved within the Factual Proffer. (Id.).

The Factual Basis was signed by the prosecutor and defense counsel. (CR Doc. No. 16). It provided, *inter alia*:

> Since at least as early as 2015, Defendant Joseph Ranorris WILSON was a member of a conspiracy in Gaston County, within the Western District of North Carolina, and elsewhere, to distribute and to possess with intent to distribute cocaine and cocaine base, commonly known as "crack cocaine."
>
> In September 2014, the Gastonia Police Department (GPD) developed a confidential human source ("CHS #1") who has been confirmed by independent law enforcement research to have been Joseph Ranorris WILSON's associate. CHS #1 is cooperating with law enforcement and has made numerous statements against his/her own penal interest that law enforcement has been able to corroborate as truthful.
>
> CHS #1 advised law enforcement that WILSON was part of a conspiracy that trafficked in more than several kilograms of cocaine per year. CHS #1 provided historical information where CHS #1 would purchase one to two ounces of crack cocaine from WILSON on a weekly basis (for the more than one year prior to CHS #1 cooperating with law enforcement). CHS #1 further provided that WILSON regularly drives his mother's Pontiac vehicle, his father's pick-up truck, and his sister's small sedan. WILSON'S vehicle is parked in the backyard and not drivable due to mechanic failure.
>
> In October 2015, the GPD developed a second confidential human source (CHS #2) who has been confirmed by independent law enforcement research to have been Joseph WILSON's associate. CHS #2 is cooperating with law enforcement and has made numerous statements against his/her own interest that law enforcement has been able to corroborate as truthful.
>
> On May 31, 2016, law enforcement with GPD conducted a traffic stop on a vehicle in which WILSON was a passenger. During the investigative stop, the driver and owner of the vehicle consented to a search of the vehicle. As a result, law enforcement found, among other things, approximately one ounce (28 grams) of cocaine, a 40 caliber Beretta PX4 Storm handgun, digital scales, and $1,280 in cash. The firearm was manufactured outside the State of North Carolina; thus it traveled in and effected interstate commerce.

On July 29, 2016, law enforcement conducted a controlled drug purchase of 14.5 grams of crack cocaine from WILSON at his residence located on West 10th Avenue, Gastonia, North Carolina, and observed as WILSON met with CHS #2 to deliver the drugs.

On August 2, 2016, law enforcement conducted a controlled drug purchase of 13.4 grams of crack cocaine from WILSON at his … residence.

On August 10, 2016, law enforcement conduct d a controlled drug purchase of 13.7 grams of crack cocaine from WILSON at his … residence.

Defendant Wilson has prior convictions, to include the following felonies: Possession of Firearm by Felon on 3/9/2007 in Gaston County; Possession with Intent to Sell Schedule II on 10/4/2004 in Gaston County (two counts, for which he received a maximum sentence of I year and 2 months); Possession of Firearm by Felon on 10/7/1999 in Gaston County; Possession of Stolen Goods on 5/1111994 in Gaston County; Possession of Schedule II on 5/11/1994 in Gaston County; and Common Law Robbery bn 9/20/1995 in Gaston County. Therefore, he was prohibited from possessing the firearm in this case.

(CR Doc. No. 16 at 1-2).

A Rule 11 hearing came before Magistrate Judge David Keesler on June 8, 2017. (CR Doc. No. 19). Petitioner stated under oath that he understood the charges against him and the consequences of the plea including the maximum and minimum penalties he faced if convicted. (CR Doc. No. 19 at 1-2). Petitioner confirmed that he spoke to counsel about how the U.S. Sentencing Guidelines may apply to his case, that the sentence has not yet been determined and the guidelines have not yet been calculated, and that he may receive a sentenced higher or lower than called for by the guidelines. (Id.). Petitioner acknowledged the rights he was waiving by pleading guilty including the right to be represented by a lawyer, the presumption of innocence, the right to not testify at trial, and the Government's burden of proof. (CR Doc. No. 19 at 2-3). Petitioner admitted his guilt of the offense charged in Count (1). (CR Doc. No. 19 at 3). The prosecutor summarized the terms of the Plea Agreement in open court including Petitioner's appellate and post-conviction waivers. (Id.). Petitioner stated that he understood the Plea

4

Agreement and confirmed that he was pleading guilty without any threats, intimidation, or promises other than the terms of the Plea Agreement. (Id.). Petitioner further stated that he read and understood the Factual Basis and agreed with it. (Id.). Petitioner stated that he had enough time to discuss with his lawyer any possible defense he may have to the charge and that he was satisfied with the services of his attorney. (Id.).

The Presentence Investigation Report (PSR) calculated the base offense level as 32 because Petitioner was responsible for at least 840 grams but less than 2,800 grams of cocaine base. (CR Doc. No. 26 at ¶ 21). Two levels were added pursuant to U.S.S.G. § 2D1.1(b)(1) because a firearm was possessed. (CR Doc. No. 26 at ¶ 22). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 31. (CR Doc. No. 26 at ¶¶ 28-30). Petitioner had seven criminal history points and a criminal history category of IV. (CR Doc. No. 26 at ¶¶ 46-47). This resulted in an advisory guideline range of 151 to 188 months' imprisonment, however, the statutorily required minimum sentence pursuant to the § 851 enhancement was 20 years' imprisonment and 10 years of supervised release. (CR Doc. No. 26 at ¶¶ 84-85).

The Government withdrew the § 851 Information at sentencing pursuant to the Plea Agreement, which reduced the minimum mandatory sentence to 10 years' imprisonment and at least five years of supervised release. See (CR Doc. No. 33). In an Order entered on January 8, 2018, the Court adjudicated Petitioner guilty of Count (1) and sentenced him within the advisory guideline range to 160 months' imprisonment followed by five years of supervised release. (CR Doc. No. 32). Petitioner did not appeal.

Petitioner filed the instant § 2255 Motion to Vacate on November 8, 2018. He argues that (renumbered): (1) counsel was ineffective for: inadequately researching and misadvising Petitioner about the elements of the § 846 offense, which rendered the plea involuntary, and for refusing to

5

object to the PSR's inclusion of drugs that were outside of Petitioner's buyer/seller relationship; and (2) the prosecutor engaged in misconduct by indicting Petitioner and allowing him to plead guilty while knowing that Petitioner's conduct did not satisfy the elements of Count (1).[1]

The Government filed a Response, (Doc. No. 3), arguing that Petitioner's ineffective assistance claims should be denied because he cannot show deficient performance or prejudice and the United States did not engage in prosecutorial misconduct by indicting Petitioner for a drug-trafficking conspiracy and allowing him to plead guilty to that charge.

Petitioner did not reply.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and

---

[1] Petitioner requests the appointment of counsel. (Doc. No. 1 at 12). There is no constitutional right to the appointment of counsel in a § 2255 proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). The Rules Governing § 2255 Proceedings mandate the appointment of counsel where discovery is necessary or if the matter proceeds to an evidentiary hearing. See 28 U.S.C. § 2255 foll. The Court may also appoint counsel to a financially eligible habeas petitioner if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). No evidentiary hearing is being held in this case that the Court finds that the appointment of counsel is not required in the interests of justice. Therefore, this request will be denied.

6

governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

**(1) Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he

7

would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

First, Petitioner contends that counsel misadvised him to plead guilty to Count (1) without first researching the offense's elements regarding conspiracy as opposed to a buyer-seller relationship, which rendered his guilty plea involuntary.

To establish a drug conspiracy under 21 U.S.C. § 846, the government must prove that "(1) [the defendant] entered into an agreement with one or more persons to engage in conduct that violated 21 U.S.C. § [ ] 841(a)(1) ...; (2) that [the defendant] had knowledge of that conspiracy; and (3) that [the defendant] knowingly and voluntarily participated in the conspiracy." United States v. Howard, 773 F.3d 519, 525 (4th Cir. 2014) (quoting United States v. Mastrapa, 509 F.3d 652, 657 (4th Cir. 2007)). Given the "clandestine and covert" nature of conspiracies, the government can prove the existence of a conspiracy by circumstantial evidence alone. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (*en banc*). A mere buyer-seller relationship is insufficient to support a conspiracy conviction. United States v. Hackley, 662 F.3d 671, 679 (4th Cir. 2011). However, such evidence "'is at least relevant (*i.e.* probative) on the issue of whether a conspiratorial relationship exists.'" Id. (quoting United States v. Mills, 995 F.2d 480, 485 n. 1 (4th Cir. 1993)). Further, "evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs." United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008) (citing Burgos, 94 F.3d at 858). "Additionally, evidence of a defendant buying or selling a substantial quantity of drugs over a short period of time is enough to raise an inference of a distribution conspiracy. United States v. Allen, 716 F.3d 98, 104 (4th Cir. 2013).

8

Petitioner agreed in the Factual Proffer that: he was a member of a conspiracy since at least 2015 to distribute and possess with intent to distribute cocaine base; a confidential source bought one or two ounces of crack from Petitioner on a weekly basis for more than a year; a second confidential source admitted to being Petitioner's associate; during a traffic stop of a vehicle in which Petitioner was a passenger, law enforcement officers found approximately 28 grams of cocaine, a handgun, digital scales, and $1,280 in cash; and law enforcement conducted controlled purchases of cocaine base from Petitioner on three different occasions in the amounts of 14.5, 13.4, and 13.7 grams. (CR Doc. No. 16). This evidence of Petitioner's frequent and regular sales of between ½ ounce and two ounces of crack cocaine over the course of more than a year supports the existence of an ongoing conspiracy rather than a mere buyer-seller relationship. See, *e.g.*, United States v. Davis, 801 F. App'x 75 (4th Cir. 2020) (evidence of repeated sales of between ½ and 2 ounces of PCP to the same individual on a weekly basis for a year supported the existence of an ongoing conspiracy). Accordingly, counsel's advice to plead guilty to conspiracy charged in Count (1) was not deficient.

Second, Petitioner contends that counsel was ineffective for refusing to object to the PSR's drug quantity "outside of his buyer and seller relationship." (Doc. No. 1 at 7).

Petitioner admitted as part of the knowing and voluntary Plea Agreement that "[t]he amount of cocaine base ('crack cocaine') that was known to or reasonably foreseeable by [Petitioner] was in excess of eight hundred and forty (840) grams but less than two thousand eight hundred (2,800) grams…" resulting in a base offense level of 32. (CR Doc. No. 17 at 2-3). This is the exact amount included in the PSR and Petitioner received the base offense level of 32 that was contemplated in the Plea Agreement. (CR Doc. No. 26 at ¶ 21). This amount is also supported by the drug activities and amounts that are set forth in the Factual Proffer to which Petitioner agreed

9

at the Rule 11 hearing. See (CR Doc. No. 16); (CR Doc. 19 at 3); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). Counsel cannot be deemed ineffective for failing to object to a drug amount that was supported by the Factual Proffer and which was part of Petitioner's knowing and voluntary Guilty Plea.

Moreover, Petitioner has failed to demonstrate prejudice. He only seeks sentencing relief and does not seek to withdraw his guilty plea. Therefore, he has failed to satisfy Strickland's prejudice prong by showing that there is a reasonable probability that he would not have pleaded guilty but for counsel's alleged ineffective assistance. Further, it would not have been objectively reasonable for Petitioner to go to trial but for counsel's allegedly ineffective assistance. The Plea Agreement was highly favorable to Petitioner in that it resulted in the dismissal of six serious charges and a three-level deduction for acceptance of responsibility. There is also no reasonable probability that Petitioner would have received a lower sentence had counsel raised the frivolous objection about the drug quantity at sentencing. See generally Rodriguez v. Bush, 842 F.3d 343, 346 (4th Cir. 2016) (a defendant is not prejudiced by counsel's failure to make a meritless objection).

As Petitioner has failed to demonstrate either deficient performance or prejudice, his claims of ineffective assistance of counsel will be denied.

**(2)** **Prosecutorial Misconduct**

In reviewing a claim of prosecutorial misconduct, the court "review[s] the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002).

Petitioner contends that the Government engaged in misconduct by indicting Petitioner for drug trafficking conspiracy and allowing him to plead guilty to that charge even though it knew the evidence was insufficient to support the elements of the offense. Petitioner appears to suggests that the Government presented false evidence to the Grand Jury in order to obtain the Indictment.

Petitioner's self-serving and unsupported allegations that the Government may have presented false evidence to the Grand Jury and that the Government knew there was no evidence to support the Indictment or guilty plea is conclusively refuted by Petitioner's admitted conduct. See Section (1), *supra*. This claim is meritless and will be denied.

**IV. CONCLUSION**

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: October 6, 2020

Robert J. Conrad, Jr.
United States District Judge